

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MOHAMMED HAMZAH KHAN

No. 14 CR 564

Judge John J. Tharp, Jr.

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant MOHAMMED HAMZAH KHAN, and his attorneys, THOMAS A. DURKIN, CHRISTOPHER T. GROHMAN, and ROBIN V. WATERS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.    The indictment in this case charges defendant with attempting to provide material support, namely, personnel, to a foreign terrorist organization, namely the Islamic State of Iraq and the Levant, in violation of Title 18, United States Code, Section 2339B(a)(1).

3.    Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.   By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with attempting to provide material support, namely, personnel, to a foreign terrorist organization, namely the Islamic State of Iraq and the Levant, in violation of Title 18, United States Code, Section 2339B(a)(1).

## Factual Basis

6.   Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than in or about February 2014, and continuing until at least on or about October 4, 2014, at Chicago, in the Northern District of Illinois, and elsewhere, defendant did knowingly attempt to provide material support and resources, namely, personnel (to wit, himself, Minor 1, and Minor 2) to a foreign terrorist organization, namely, the Islamic State of Iraq and the Levant, knowing that it was a designated foreign terrorist organization and that the organization had engaged and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B(a)(1).

More specifically, on October 15, 2004, the United States Secretary of State designated al-Qaeda in Iraq, then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization under Section 219 of the Immigration and

2

Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.

On May 15, 2014, the Secretary of State amended the designation of al-Qaeda in Iraq as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISI"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the group has never called itself "al-Qaeda in Iraq," this name had frequently been used to describe it through its history. In an audio recording publicly released on June 29, 2014, ISIL announced a formal change of ISIL's name to the Islamic State.

Beginning no later than February 2014, defendant and Minor 1 sought and ultimately obtained introductions to ISIL members in Syria to assist them (defendant and Minor 1) with traveling to Syria and to join ISIL. Defendant and Minor 1 used the internet as part of their efforts to establish contact and communicate with ISIL members. Defendant and Minor 1 spoke with ISIL members to coordinate the logistics of their trip and admission into ISIL controlled territory.

On or about July 21, 2014, defendant obtained a job at Company A. He used money from this job to pay for his, Minor 1's, and Minor 2's travel to Syria to offer

3

themselves to the direction and control of ISIL. Defendant worked at Company A through on or about October 3, 2014.

On or about September 26, 2014, defendant purchased three roundtrip tickets for himself, Minor 1, and Minor 2 to travel between Chicago and Istanbul, Turkey. Defendant paid approximately $2,679 for the three airline tickets to Istanbul. Between on or about September 27 and 29, 2014, defendant obtained visas online for himself, Minor 1 and Minor 2 to travel to Turkey.

On or about October 4, 2014, at approximately 1:00 p.m., defendant, Minor 1, and Minor 2 traveled to O'Hare International Airport and checked in for the first leg of their trip to Istanbul. After checking in, defendant, Minor 1, and Minor 2 proceeded through a security checkpoint and walked towards the departure gate for their flight. Law enforcement stopped defendant, Minor 1, and Minor 2 before they were able to travel to Istanbul.

Prior to going to the airport, defendant left behind a letter for his parents. The letter detailed, among other things, the purpose of his trip, his intention of traveling to Syria, and his reasons for leaving his family.

Upon arriving in Syria, defendant intended to work under the direction and control of ISIL, and be required to take any assignment ISIL gave him, which he expected would include activity ranging from non-violent assistance to a combat role. At the time defendant engaged in the conduct set forth above, he knew that ISIL was a designated foreign terrorist organization.

4

## Maximum Statutory Penalties

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 15 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of any term of years, including life.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as otherwise noted:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the

5

Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

      b.    **Offense Level Calculations**.

      i.    The base offense level is 26, pursuant to Guideline § 2M5.3(a).

      ii.    The offense level is increased by two levels because the offense involved the provision of material support or resources, namely, personnel, with the intent, knowledge, or reason to believe that such support or resources were to be used to commit or assist in the commission of a violent act, pursuant to Guideline § 2M5.3(b)(1)(E).

      iii.    The offense level is increased by 12 levels because the offense of conviction is a felony that involved a federal crime of terrorism as defined in Title 18, United States Code, Section 2332b(g)(5), namely, the offense of conviction: (1) was calculated to influence or affect the conduct of government by intimidation and coercion, and to retaliate against government conduct; and (2) was a violation of Title 18, United States Code, Section 2339B; pursuant to Guideline § 3A1.4(a).

      iv.    The government's position is that, pursuant to Guideline § 3B1.4, the offense level is increased by two levels because defendant attempted to use persons less than eighteen years of age, namely Minor 1 and Minor 2, to commit

6

the offense or assist in avoiding detection of, or apprehension for, the offense. The defendant reserves the right to dispute this enhancement at sentencing.

    v.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    vi.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero. Pursuant to Guideline § 3A1.4(b), defendant's criminal history category is VI.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 39, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines sentence of 180 months' imprisonment, pursuant to Guideline § 5G1.1(a), in addition to any supervised release and fine the Court may impose. The defendant reserves the right to dispute this guideline calculation, as noted above in paragraph 9.b.iv.

      e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting

8

any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding, including in the United States or any foreign prosecution. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines, in its sole discretion, that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall

move the Court, pursuant to Guideline § 5Kl.l, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 60 months. Defendant shall be free to recommend any sentence. At the time of the execution of this Plea Agreement, it is the government's intention to so move. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13.     If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.     Defendant and the government agree to jointly recommend a term of supervised release of not less than 180 months following any period of imprisonment.   The Court may impose any term, including a term greater or less than 180 months.

15.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the

10

Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 564.

18.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

11

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not

12

the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

               v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

               vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

               b.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      20.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, except as noted below. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, and in exchange for the concessions made by the United States in this Agreement, defendant knowingly waives the right to appeal:

13

(1) his conviction; (2) any pre-trial rulings by the Court; and (3) any part of the sentence (or the manner in which that sentence was determined) if the Court sentences defendant to a term of imprisonment of 60 months or less, and a fine within the maximums provided by law. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

21.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

22.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him,

14

and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

23.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be

15

sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

25.     In exchange for the government's concessions made in this Agreement, defendant agrees to the imposition of certain conditions as part of any term of supervised release that should include but will not be limited to:

a.     Continuing to cooperate with the government throughout the pendency of his terms of incarceration and supervised release;

b.     Restrictions on travel;

c.     Informing the Probation Office prior to: (1) purchasing a cellular phone or any device that can access the internet; and (2) creating new online accounts including email, social media, instant messaging, chat accounts or services. Defendant also consents to this information being shared with the United States Attorney's Office for the Northern District of Illinois;

d.     Refraining from knowingly communicating in any manner with any persons who are located outside the United States without the prior approval of the United States Probation Office, except that this approval requirement will not apply for communication with family members or other individuals whose identity has been previously verified by the Probation Office;

e.     Refraining from knowingly communicating in any manner with any persons who are, or claim to be, associated with a designated foreign terrorist

16

organization (as defined in 8 U.S.C. § 1189), or who are, or claim to be, involved with acts of violence, or advocating for acts of violence;

      f.      Complying with the Computer and Internet Monitoring Program administered by the United States Probation Office for at least the first 90 months of supervised release;

      g.      Allowing Probation Officers to search (including but not limited to a forensic examination), and capture evidence of violations from, any communication devices (*e.g.*, phones, tablets, computers or devices with internet access or communication capabilities), email accounts, social media accounts or electronic communication accounts within the possession, custody or control of defendant up to four times per month between 6 a.m. and 10 p.m. for at least the first 90 months of supervised release;

      h.      Psychological and violent extremism counseling, from providers as directed by the United States Probation Office, and agreed to by the United States Probation Office, the United States Attorney's Office for the Northern District of Illinois, and the defendant;

      i.      Employment and educational requirements, which may include online education courses if approved by the Probation Office; and

      j.      Completing no less than 120 hours of community service per year of supervised release.

26.     Defendant acknowledges that the specific terms of any of these conditions will be determined by the Court at sentencing and that defendant and the government may submit additional proposed conditions. It is further understood by the parties that the sentencing judge is not bound by the conditions described in paragraph 25, and may impose less or more restrictive conditions of supervision as part of any sentence of supervised release.

27.     Defendant further understands that the Court has authority to impose additional conditions and modify these conditions at any point during any period of supervised release.

28.     Defendant waives any right to file a motion to terminate any term of supervised release before having completed 120 months of supervision, except with the concurrence of the government.

## Other Terms

29.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

30.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

18

31.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, including supervised release, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _10, 29, 15_

\
ZACHARY T. FARDON
United States Attorney

\
R. MATTHEW HILLER
Assistant U.S. Attorney

\
SEAN K. DRISCOLL
Assistant U.S. Attorney

\
MOHAMMED HAMZAH KHAN
Defendant

\
THOMAS A. DURKIN
Attorney for Defendant

\
CHRISTOPHER T. GROHMAN
Attorney for Defendant

\
ROBIN V. WATERS
Attorney for Defendant

20