UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MOHAMMED HAMZAH KHAN | No. 14 CR 564<br><br>Judge John J. Tharp Jr. |

### GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, through ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits its Sentencing Memorandum for defendant Mohammed Hamzah Khan. This matter is set for sentencing on November 18, 2016.[1]

### Introduction

On October 4, 2014, Mohammed Hamzah Khan, then a 19 year-old — just 16 months removed from high school, where he was known as a good student, a leader, reliable, and courteous[2] — attempted to execute a carefully calculated plan to take his younger siblings (Minor 1 and Minor 2) halfway around the world to join and support the barbaric Islamic State of Iraq and the Levant. This was not an impulsive decision or a moment of indiscretion. Rather, Khan had planned his travel to join ISIL for months, and understood the gravity of his actions. He was committed to

---

[1] The Presentence Investigation Report is cited "PSR," the plea agreement is cited as "Plea," and the Government's Version is cited as "GV." Other docket entries in this case are cited as "R." followed by the docket number.

[2] *See* PSR at ¶64.

abandoning his family, his education, his community, and his country for ISIL, and he understood that he would likely die for its cause, and that he was bringing his minor siblings into a war zone. Fortunately for Khan and his family, the Federal Bureau of Investigation interceded and stopped Khan and his siblings at O'Hare before they were able to travel to join ISIL.

In spite of the tortured judgment that led Khan to O'Hare on October 4, 2014, Khan has taken an important first step in rejecting ISIL and taking advantage of his second chance by cooperating with the government's investigation of ISIL and his recruiters. Khan's cooperation has benefited active criminal investigations and our foreign partners.

Through Khan's debriefings, he outlined his recruitment by ISIL and its supporters through social media and electronic communications. He identified his recruiters and explained how they influenced his transition from a student empathetic to the plight of the victims of the Assad regime to supporting an organization that relies on savagery, fear, and propaganda to govern.

Based on Khan's cooperation, and in consideration of Title 18, United States Code, Section 3553, and Khan's plea agreement, the government respectfully requests that this Court impose a 60 month sentence of imprisonment followed by 180 months of intensive and customized supervised release, as outlined in Exhibit A.

**Procedural History**

On October 6, 2014, the government charged Khan through a one count criminal complaint alleging that Khan attempted to provide material support,

namely personnel, to the Islamic State of Iraq and the Levant, in violation of Title 18, United States Code, Section 2339B(a)(1). (R. 1). On January 8, 2015, a grand jury sitting in the Northern District of Illinois returned a one-count indictment against Khan alleging the same offense. (R. 37.) On October 29, 2015, Khan entered a plea of guilty to the sole count of the indictment. (R. 80.)

Pursuant to the plea agreement, Khan agreed to fully and truthfully cooperate in any matter in which he is called upon to cooperate by the U.S. Attorney's Office for the Northern District of Illinois. (Plea at 9.) Khan agreed to provide "complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding, including in the United States or any foreign prosecution." (*Id.*) If Khan met his cooperation obligations, the government agreed to recommend to the Court a sentence of 60 months' imprisonment. (Plea at 9–10.)

### Khan's Cooperation

As noted above, Khan has met his cooperation obligations. Khan provided four extensive debriefings, amounting to nearly 20 hours of questioning. Moreover, Khan has committed to cooperating throughout his incarceration and during the entire length of his supervised release, if called upon to do so. Khan may be asked to participate in additional proffers in the future, testify before grand juries, and testify in court proceedings, including trials in the United States and abroad.

Most significantly, the government benefited from information provided by Khan that furthered criminal investigations of two ISIL fighters and recruiters. First,

Khan provided extensive information about his communication with and recruitment by an ISIL recruiter and fighter, described here as Individual 1. Khan's information benefited search warrants for approximately 16 of Individual 1's electronic communication accounts by further establishing his *modus operandi* and his identity.

Khan's cooperation with respect to Individual 1, however, will no longer be needed. According to open source reporting, Individual 1 is now deceased. Despite the fact that Khan will not need to testify against Individual 1, his cooperation was still significant in that it benefited the above described criminal investigations, it allowed the government to provide valuable information to foreign partners, and it put the government (and Individual 1's home country) in a position to pursue criminal charges against Individual 1 had he come into U.S. or foreign custody.

Second, Khan provided information about another ISIL fighter and recruiter, described here as Individual 2. Though Individual 2 has not yet been criminally charged, information from Khan regarding Individual 2 has been corroborated by other witnesses similarly recruited by Individual 2.

The investigation of Individual 2 is ongoing. Should there be charges brought against Individual 2, the government intends to rely on information concerning Individual 2 provided by Khan and to call Khan as a trial witness against Individual 2, should Individual 2 proceed to trial. Khan's information concerning Individual 2 is particularly valuable insofar as Khan recalled details about Individual 2 that will likely be helpful in establishing proof of identity.

## Maximum Potential Sentence

Because Khan committed his offense in 2014, he faces a maximum sentence of 15 years' imprisonment pursuant to the then-applicable provisions of Title 18, United States Code, Section 2339B(a)(1),[3] and a fine of up to $250,000. Pursuant to Title 18, United States Code, Sections 3583(j) and 2332b(g)(5)(B), this Court may impose a term of supervised release of any term of years, including life. *See* PSR at ¶77.

## Sentencing Guidelines and Criminal History

### *Offense Level Calculations*

The November 2016 edition of the U.S. Sentencing Guidelines Manual applies in this case. The government agrees with the calculation of Khan's advisory Guideline range as calculated by the U.S. Probation Office, except for Probation's decision not to apply the enhancements for the use of minors in commission of the offense in accordance with Guideline § 3B1.4, as described below. *See* PSR at 8-10.

The base offense level is 26, pursuant to Guideline § 2M5.3(a). The offense level should be increased by two levels because the offense involved the provision of material support with the intent, knowledge, or reason to believe that the support was to be used to commit or assist in the commission of a violent act, pursuant to Guideline § 2M5.3(b)(1)(E).

Further, the offense level should be increased by 12 levels, pursuant to Guideline § 3A1.4(a), because the offense is a felony that involved a federal crime of

---

[3] On June 2, 2015, Congress subsequently amended Section 2339B to provide for a maximum punishment of 20 years' imprisonment. Pub. L. 114–23, Title VII.

5

terrorism as defined in Title 18, United States Code, Section 2332b(g)(5), namely, the offense: (1) was calculated to influence or affect the conduct of government by intimidation and coercion, and to retaliate against government conduct; and (2) was a violation of Title 18, United States Code, Section 2339B. *See* PSR at ¶26.

This Court should also apply a two-level enhancement pursuant to Guideline § 3B1.4, because Khan attempted to use persons less than eighteen years of age, namely Minor 1 and Minor 2, to commit the offense or assist in avoiding detection of, or apprehension for, the offense. (The U.S. Probation Office disagrees with the government. *See* PSR at ¶27. Khan also reserved the right to contest the application of Guideline § 3B1.4.) The Seventh Circuit has held that a defendant uses a minor if his "affirmative actions involved minors in his criminal activities," which would include "when the minor is a partner in the criminal offense" or "when the minor's role is subordinate to that of the criminal defendant." *United States v. Ramsey*, 237 F.3d 853, 859 (7th Cir. 2001). *See also* U.S.S.G. § 3B1.4, Application Note 1 ("'Used or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting."). Here, Khan's "actions involved minors in his criminal activities," namely bringing his siblings to a war zone to join ISIL.

Khan has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct, and a result, a two-level reduction in the offense level is appropriate, in accordance with Guideline § 3E1.1(a). Khan also is entitled to an additional one-level reduction in offense level, pursuant to Guideline

6

§ 3E1.1(b), because: he timely notified the government of his intention to enter a plea of guilty. Khan's timely guilty plea permitted the government to avoid preparing for trial and conducting extensive pre-trial litigation, and permitted the Court to allocate its resources more efficiently. *See* PSR at ¶¶31-32.

*Criminal History Category*

Khan has no prior criminal history, and thus, has earned no criminal history points. Pursuant to Guideline § 3A1.4(b), however, Khan's criminal history category is VI. *See* PSR at ¶40.

*Anticipated Advisory Sentencing Guidelines Range*

Therefore, Khan's anticipated offense level is 39, which, when combined with a criminal history category of VI, results in an anticipated advisory Sentencing Guideline sentence of 180 months' imprisonment, pursuant to Guideline § 5G1.1(a) (as the statutory maximum sentence is 180 months' imprisonment), in addition to any supervised release and fine the Court may impose.

**Sentencing Analysis in Accordance with Section 3553(a)**

As set out in Title 18, United States Code, Section 3553(a), the Court must consider several factors in determining the sentence, including the history and characteristics of Khan, the nature and circumstances of the offense, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide adequate deterrence, and protect the public. Each of these factors is discussed below:

*History and Characteristics of Khan*

Khan's sentence should reflect his history and characteristics, both as they aggravate and mitigate his offense conduct. In mitigation, this Court should consider his young age and his lack of prior criminal history. While Khan had just turned 19 when he attempted to join ISIL, Khan's radicalization process and online recruitment started most likely when he was only 17 or 18. Furthermore, the genesis of Khan's interest in the conflict of Syria appears to have initially focused on the plight of the Syrian people under attack by the Assad regime.

This Court should also consider Khan's mere act of attempting to cooperate in good faith as mitigation. Cooperation against a foreign terrorist organization particularly in the context of believing one had a religious obligation to support it, is not the typical dilemma of the traditional federal cooperator.

By cooperating, Khan has taken an important step in turning away from ISIL and the purported religious authority of its recruiters and facilitators. Khan not only attempted to cooperate against Individuals 1 and 2, he also offered to testify against other ISIL recruiters, fighters, and supporters, including Mizanur Rahman.[4] Attempting to cooperate against individuals like Rahman sends a strong counter-narrative that helps delegitimize their self-proclaimed authority.

---

[4] According to the United Kingdom's Crown Prosecution Service, Mizanur Rahman was convicted in London's central criminal court in 2016 for encouraging support for ISIL. *See* http://blog.cps.gov.uk/2016/08/anjem-choudary-and-mohammed-rahman-convicted-of-inviting-support-for-daesh.html. *See also* "Mizanur Rahman: Anjem Choudary's right hand man - BBC Newsnight." *See* https://www.youtube.com/watch?v=UMdPEwrMRM4. Khan's testimony, however, ultimately was not needed in the case of Rahman and was moot for others as some of his ISIL contacts are now deceased.

8

In aggravation, however, this Court should consider Khan's commitment to ISIL, including the fact that he was willing to give his life (and the life of his minor siblings) to its cause—even when news reports made it clear that ISIL was committing (and boasting about) atrocities in Syria and Iraq. Khan's own words, in a letter he left behind for his parents that the FBI subsequently recovered, make his intentions clear. Khan wrote that he had an obligation to "migrate" to the "Islamic state" now that it has "been established," and that he could no longer live in a country where he could not openly discuss jihad: "I cannot live under a law in which I'm afraid to speak my beliefs. I want to be ruled by the sharrah, the best law for all-mankind. Tell me, if we truly were free, why do we have to live in fear? True, we can practice other aspects of our deen but why can't we openly talk about jihad." (GV at 6.)

In analyzing Khan's history and characteristics, the Court should also consider Khan's online sophistication and his use of multiple online aliases, monikers, and *noms de guerre*. Khan used multiple electronic communications platforms and accounts to communicate with ISIL fighters and supporters. These platforms allowed him to connect with ISIL fighters, recruiters, and supporters, including Individual 1, Individual 2, Mizanur Rahman, Avin Marsalis Brown,[5] and others. Through these connections, Khan became indoctrinated into ISIL's ideology, learned the logistics required to get into Northern Syria, and acquired the *bona fides* necessary to be

---

[5] Brown pleaded guilty in the Eastern District of North Carolina (case #14-CR-58) to conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 2339A.

9

admitted into ISIL. Khan's sentence, particularly his conditions of supervised release, should account for his online sophistication.

*Nature and Circumstances of the Offense*

The nature of this offense could not be more serious short of Khan succeeding with his plan and actually fighting for ISIL. Khan sought to offer himself to an organization committed to religious and ethnic slaughter, and was well aware of ISIL's barbaric nature. The following timeline of selected events shows what was happening as Khan planned his path to attempt to join ISIL in 2014:

| Approx. Timeline | Hamzah Khan's Path to ISIL in 2014 | Examples of Highly Publicized ISIL Atrocities and Related Events in 2014 |
| --- | --- | --- |
| Jan. | | ISIL seizes the Iraqi city of Fallujah and the Syrian city of Raqqa.[6] |
| Early Feb. | | Al Qaeda announced its break with ISIL.[7] |
| Feb – Mar. | Khan and Avin Brown corresponded online about violent jihad and their respective interest in traveling overseas to support foreign terrorist organizations. Ultimately, Brown introduced Khan to Individual 1. | |

---

[6] Sly, Liz, "Al-Qaeda force captures Fallujah amid rise in violence in Iraq," The Washington Post, January 3, 2014, https://www.washingtonpost.com/world/al-qaeda-force-captures-fallujah-amid-rise-in-violence-in-iraq/2014/01/03/8abaeb2a-74aa-11e3-8def-a33011492df2_story.html. "ISIL recaptures Raqqa from Syria's rebels," Al Jazeera, January 14, 2014, http://www.aljazeera.com/news/middleeast/2014/01/isil-recaptures-raqqa-from-syrias-rebels-2014114201917453586.html.

[7] Hubbard, Ben, "Al Qaeda Breaks with Jihadist Group in Syria Involved in Rebel Infighting," New York Times, Feb. 3, 2014, http://www.nytimes.com/2014/02/04/world/middleeast/syria.html?_r=0

| March | Khan and one of his siblings begin communicating with Individual 1. These communications continued intermittently until they attempted to travel to join ISIL. Several examples are cited below. | |
|---|---|---|
| June 10 | | ISIL took control of the Iraqi city of Mosul.[8] |
| June 11 | | ISIL took control of the Iraqi city of Tikrit.[9] |
| June 29 | | ISIL's leader, Abu Bakr al-Baghdadi, announced ISIL's name change to the Islamic State and declared the caliphate had been formed.[10] |
| July 21 | Khan obtained a job to earn money to travel to Syria and to take his siblings with him. | |
| Early Aug. | | ISIL captured the Yazidi town of Sinjar and called for the "systematic destruction of the entire Yazidi people" in early August 2014.[11] |
| Aug. 3 | | ISIL took control of Mosul Dam.[12] |
| Aug. 6 – 22 | Khan communicated with Individual 1 through an electronic communication service on various occasions. | |

---

[8] "Iraqi city of Mosul falls to jihadists," CBS News, June 10, 2014, http://www.cbsnews.com/news/iraq-city-of-mosul-falls-into-hands-of-isis-jihadists-after-police-army-abandon-posts/.

[9] "Iraq city of Tikrit falls to ISIL fighters," Al Jazeera, June 11, 2014, http://www.aljazeera.com/news/middleeast/2014/06/iraqi-city-tikrit-falls-isil-fighters-2014611135333576799.html.

[10] Rubin, Alissa J., "Militant Leader in Rare Appearance in Iraq," New York Times, July 5, 2014, http://www.nytimes.com/2014/07/06/world/asia/iraq-abu-bakr-al-baghdadi-sermon-video.html?_r=0.

[11] Statement of the President of the United States, August 7, 2014.

[12] Duke, Alan and Hamdi Alkhshali, "ISIS claims gains, takes control of Iraq's largest hydroelectric dam," CNN, August 4, 2014, http://www.cnn.com/2014/08/03/world/meast/iraq-crisis-isis/.

11

| | | |
|---|---|---|
| Aug. 7 | Khan reached out online to Mizanur Rahman and asked whether teaching Islam ("da'wa") was more important than joining the caliphate (ISIL). | The U.S. launched airstrikes against ISIL.[13] |
| Aug. 13 | Khan researched flights to Turkey. | |
| Aug. 20 | | ISIL beheaded American journalist James Foley in mid-August 2014.[14] |
| Aug. 21 | Khan purchased phone equipment for the trip. | |
| Aug. 28 | Khan purchased a portable mini-wireless router for the trip. | |
| Sept. 9 | | ISIL beheaded American journalist Steven Sotloff.[15] |
| Sept. 11 | Khan emailed the U.S. State Department to attempt to expedite one of his siblings receiving his/her passport. | |
| Sept. 13 | | ISIL beheaded British aid worker David Haines.[16] |
| Sept. 22 | | ISIL publicly encouraged Muslims around the world to kill U.S. citizens and westerners.[17] |

---

[13] Statement of the President of the United States, August 7, 2014.

[14] Carter, Chelsea J., "Video shows ISIS beheading U.S. journalist James Foley," CNN, August 20, 2014, http://www.cnn.com/2014/08/19/world/meast/isis-james-foley/. *See also* https://www.cpj.org/killed/2014/james-foley.php.

[15] Carter, Chelsea J. and Ashley Fantz, "ISIS video shows beheading of American journalist Steven Sotloff," CNN, September 9, 2014, http://www.cnn.com/2014/09/02/world/meast/isis-american-journalist-sotloff/.

[16] Botelho, Greg, "ISIS executes British aid work David Haines; Cameron vows justice," CNN, September 14, 2014, http://www.cnn.com/2014/09/13/world/meast/isis-haines-family-message/.

[17] Ross, Brian and Anthony Castellano, "New ISIS Recording Urges Muslims to Kill Civilians in US-Led Coalition Countries," ABC News, September 22, 2014, http://abcnews.go.com/Blotter/isis-recording-urges-muslims-kill-civilians-us-led/story?id=25669372.

| | | |
|---|---|---|
| Sept. 26 | Khan purchased three airline tickets for $2,679 for himself and his siblings to fly from Chicago to Istanbul. | |
| Sept. 27 | Khan had electronic communications with Individual 1. | |
| Sept. 27 – 29 | Khan obtained Turkish Visas for himself and his siblings. | |
| Sept. 29 | | ISIL started its effort to conquer the Turkish border town of Kobani.[18] |
| Oct. 3 | Khan sold his Xbox for cash. | ISIL beheaded British aid worker Alan Henning and threatened American aid worker Peter Kassig.[19] |
| Oct. 4 | Khan and his siblings arrived at O'Hare seeking to travel to Syria. | |

Despite these events, Khan did not turn back from his plan. Whatever his original motives were, by October 2014 Khan intended to support ISIL. Because of the seriousness of his offense, Khan deserves a significant term of imprisonment coupled with a lengthy term of intensive supervised release, and stiff consequences for failures to comply with his supervised release.

***The Seriousness of the Offense, Providing Adequate Deterrence, and Protecting the Public***

Khan's sentence in this case should also reflect the serious nature of providing material support to a foreign terrorist organization, especially when the material support takes the form of providing personnel to a group like ISIL. Such a sentence

---

[18] Narayan, Chandrika and Holly Han, "ISIS threat: Syrian town fears massacre; Obama admits underestimating rise," CNN, September 29, 2014, http://www.cnn.com/2014/09/29/world/meast/isis-syria-iraq-strikes/.

[19] "ISIS Releases Video Showing Beheading of Alan Henning," NBC News, October 3, 2014, http://www.nbcnews.com/storyline/isis-uncovered/isis-releases-video-showing-beheading-alan-henning-n208816.

13

will provide notice that, absent significant cooperation, courts will impose lengthy terms of imprisonment for individuals who travel or attempt to travel overseas to support foreign terrorist organizations that pose a threat to the United States both domestically and abroad. The threat is real, with at least 250 individuals from the United States who have joined or attempted to fight with extremists in Syria and Iraq, as well as other domestic threats either directed or inspired by ISIL.[20] Therefore, despite Khan's cooperation with the government's investigation, a sentence of 60 months' incarceration is still appropriate.

## Supervised Release

Given the risk of continued harm that Khan's actions represent, the government recommends the Court impose a term of at least 180 months of supervised release to further the goal of protecting the public, while at the same time placing Khan in the best possible position to succeed after incarceration. A lengthy term coupled with customized conditions of supervision by the U.S. Probation Office will deter Khan – especially in light of the intensive online supervision and the threat of re-incarceration – from committing further offenses. With these goals in mind, the government recommends the conditions of supervised release set forth in Exhibit A.

Lastly, the government notes that Khan has waived any right to seek early termination until after serving at least 120 months of his term of supervised release (Plea at ¶ 28), or to seek modification of conditions related to the U.S. Probation

---

[20] *House Homeland Security Committee Task Force on Combating Terrorist and Foreign Fighter Travel*, September 2015, https://homeland.house.gov/wp-content/uploads/2015/09/TaskForceFinalReport.pdf.

14

Office's search authority and the Computer and Internet Monitoring Program for at least the first 90 months of supervised release. (Plea at ¶ 25.f & 25.g.) These sunset provisions are intended to allow for an extended minimum period of observation for Khan, while creating an incentive for him to comply with the terms of supervised release and become a productive member of the community.

## Conclusion

Accordingly, the government respectfully requests that this Court impose a sentence of 60 months' imprisonment followed by 180 months of the intensive supervised release described above, no fine, and a $100 special assessment.

Respectfully submitted,<br>
ZACHARY T. FARDON<br>
United States Attorney

By:   *s/ Matt Hiller*
R. MATTHEW HILLER
SEAN K. DRISCOLL
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 697–4088