*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential & Privileged*

Stephen N. Xenakis, M.D.
Stephen N. Xenakis, M.D., LLC
2235 Military Road
Arlington, VA 22207-3959
Phone: (703) 615-3289
snxenakis@hotmail.com
snxenakis7@gmail.com

Thomas A. Durkin, Esq.
Durkin & Roberts
2446 North Clark Street
Chicago, IL 60614

**VIA ELECTRONIC MAIL**

April 27, 2015

Re: *U.S. v. Mohammed Hamzah Khan;* <u>No. 14 CR 564</u>

Dear Mr. Durkin:

This letter amplifies my clinical findings, impressions, and recommendations regarding Mohammed Hamzah Khan that I reviewed with you following a clinical evaluation including psychiatric interview on March 18-19, 2015.

I am board certified by the American Board of Psychiatry and Neurology in General Psychiatry, as well as Child and Adolescent Psychiatry, and have extensive experience in clinical psychiatry, research, teaching, and administration. I retired from the United States Army at the rank of brigadier general and served in multiple positions of responsibility as a clinician and commander. I commanded medical activities, medical centers, and medical regions for most of the last 10 years of duty. During my career, I had served as an Assistant Inspector General for The Surgeon General of the Army and had been the adjudicating authority for credentialing and privileging actions for numerous clinical providers.

The Federal Courts and the Office of the Military Commissions have qualified me as a psychiatric and medical expert in numerous cases of detainees at Guantánamo Naval Base and accused terrorists. I have had multiple interviews with detainees at Guantánamo, advised attorneys on their respective cases, and spent cumulatively over 6 months at Guantánamo Naval Base over the past 6 years. I have reviewed medical, intelligence, and military files of nearly 50 detainees and accused terrorists as a consultant to attorneys, US Government

1

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential & Privileged*

authorities, and human rights organizations. The respective cases have included high-value detainees, convicted belligerents, and others awaiting release and return to their homes. I have testified in cases of accused belligerents who were captured in the theater of operations and presented with extensive records of their association with and assisting identified terrorist organizations. I have been qualified as a psychiatric and medical expert in numerous cases in the Military Courts, Federal Courts, and State Courts.

**Basis for Letter**

This letter amplifies and further documents my opinions annotated in the Motion to Modify Conditions of Pre-trial Detention. I support the intent and purpose of the motion "to modify the conditions of Defendant's pretrial detention so as to permit release on conditions for the purposes of obtaining mental health treatment and counseling in critical thinking skills, in conformity with the aforesaid statutes and constitutional provisions, as well as the written detention order of Judge Susan E. Cox, dated November 24, 2014. (Dkt #32)."

**Background Information and Review of Records**

This report follows a review of records including:

1. Approximately 18 documents and exhibits provided by defense counsel regarding the defendant, his co-defendant siblings, and related matters on terrorism and the threat of ISIS.
2. Correspondence from Hamzah and his siblings to their parents on or about the time of intended departure.

I conducted a clinical interview including psychiatric assessment of the defendant for approximately 7 hours on March 18-19, 2015, at Kankakee Jail.

**Personal Data**

Mohammed Hamzah Khan, a 19 y/o male of Southeast Asian descent, has been detained in federal custody since apprehended in October 2014 and jailed at the Jerome Combs Detention Center in Kankakee, Illinois, for approximately 6 months. He has received no counseling, therapy, treatment, or education since apprehended. Mr. Khan has no record of military training, violence, or history of serious offenses.

**Relevant Findings and Impressions**

These findings and impressions follow standard psychiatric interviews, including mental status examination, conducted at the Kankakee Jail with the defendant.

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential & Privileged*

Hamzah is a pleasant, affable, and youthful appearing 19 y/o adolescent. He converses comfortably with respect and deference to his attorneys and examiner. Speech is appropriate and sensible. Affect is even and friendly, without indication of aggression or hostility. Mood is mildly frustrated over the conditions of confinement. He does not express fear over his safety or security. Thought processes are simplistic and concepts are poorly formed. There is no evidence of bizarre ideation or suspiciousness. He does not manifest or reveal hallucinations, delusions, or illusions. He denies suicidal or homicidal ideation or intent. Formal cognitive testing could not be performed; intelligence seems average or slightly below average.

Hamzah demonstrates limited understanding of Islam, the political and military tensions in Southeast Asia, and the threats to security and safety to our nation and communities. By his own admission, he memorized the Koran while attending a small private school but has limited fluency or understanding of Arabic. He expresses idealistic and unrealistic concepts of ISIS establishing a caliphate that delivers peace and security to Muslims, and then the world at large. He wanted to travel to Southeast Asia to be a part of that dream world he had conjured. Hamzah imagines a general, largely unformed, and unrealistic perception of the caliphate as a Utopia for Muslims. When confronted about the atrocities committed by ISIS, he objects to such heinous acts and proposes that he could magically dissociate from or ignore the conduct. Conversation over many hours reveals that he lacks critical thinking skills to analyze the implications of his actions and the policies and actions by ISIS and its consequences. His plans to travel through Turkey to Syria seemed utterly unrealistic and lacked elementary planning. Despite simplistic explanations of Muslim theology, he does not express vehement or so-called "radical" thinking on jihad or missionary work to promote Islam. He never expressed any desire or inclination to engage in hostile activity if he ever arrived in Syria and imagined he would act in a support role, e.g. a chef.

Hamzah has fanciful, simplistic, and immature perceptions about himself and the world at large. He has not received adequate or appropriate counseling, therapy, treatment, or education since being apprehended to adequately assess the basis of his conduct or its consequences on himself, his family, and community. His education and exposure as an adolescent and high school student did not provide a sound basis or reference for him to judge his ideas and opinions. He is not inherently inquisitive or intellectual to perceive the contradictions and/or limits of his opinions and judgments. His parents attempted to guide his thinking and beliefs, but his adolescent and immature mentality could not comprehend their more sophisticated opinions and reasoning. Unfortunately, the practices and attitudes of the leadership at the local mosques precluded exploring his concerns and ideas with mentors or other respected authorities. He did not receive supportive intervention or guidance from other members of the Muslim community.

3

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential & Privileged*

Hamzah discloses many contradictions in his life and shifts in his thinking and attitudes that are typical of adolescents. His best friend has been immersed in hip-hop and breakdancing, and is not adherent or involved with Islam or other religious activities. Hamzah describes a phase as a teenager of his own immersion in hip-hop culture and accompanying social activities. He moved back and forth between hip-hop and Muslim cultures without ever wondering about the contradictions or his conflicting instincts. He attended Benedictine College in Illinois, a Catholic institution, for a year before dropping out as a sophomore. His understanding of basic principles of theology, Christianity, Judaism, or Islam, is shallow despite his college experience. He indicates that he did not have the academic skills or disposition to follow through with studying science and potentially pursuing a career in healthcare as his parents had wished.

Hamzah has led a sheltered and restricted life. He attended private Muslim schools through high school with few extracurricular activities. He did not play organized sports or get involved with other students outside of a small social circle. He feels that his parents intended to retain as much of the Muslim culture as possible, and that his mother particularly did not wish to assimilate into mainstream Western society. He does not demonstrate the capacity to explore the differences between Western and Muslim culture and the impacts on him and other young people. He indicates feeling flooded by the social conditions and circumstances he confronted at college, and felt propelled to retreat into a uncomplicated and regimented Muslim world to escape them. Accordingly, he conjured that the idealistic and utopian caliphate advertised by ISIS propaganda offered him the setting to abide by his nascent convictions and reconcile the contradictions he encountered.

Hamzah has not expressed or demonstrated violent or aggressive behavior. He describes himself as making friends easily and being able to get along comfortably with many different students and adults. He has little or no disposition for confrontation and cannot recall when he has felt angry or tense in a social situation. He abhors fighting and violence towards others. Nonetheless, he is impulsive and lacks the capacity to scope out the consequences of his actions.[1] His limited capacity to conceptualize the elements of a complex situation and envision the consequences of his actions is consistent with the accepted findings in neuropsychological development. He had limited, if any, dating experience as an adolescent and lacks understanding of how to establish healthy relationships with young women his age. Moreover, the disposition to impulsive reactions to situations is recognized as a common phenomenon in adolescence.

---

[1] "Brief for the American Medical Association and the American Academy of Child and Adolescent Psychiatry as *Amici Curiae* in support of Neither Party" to the United States Supreme Court in Graham v. Florida (July 23, 2009).

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential & Privileged*

Hamzah decided to resolve the tensions and contradictions of his social situation and developmental challenges by subscribing to an unrealistic and simplistic vision of a utopian caliphate. He lacked the social network and relationships with supportive adults to work through the contradictions and questions he faced. His actions have long been recognized as not uncommon, but often ineffective, resolutions by adolescents who leave home and, in some cases, join cults.

**Recommendations**

1. The Government should arrange to provide Hamzah intense educational, socializing, and therapeutic services to help him develop critical thinking skills and appropriate perspectives and attitudes on being a Muslim male in American society. He has not been "radicalized" and denies intent to engage in military actions or commit violent acts.  He has no history of drug or alcohol use or misconduct that mark him for criminal activity.
2. His continuing detention at the correctional facility aggravates his state of mind and inhibits his capacity to appreciate the appropriate and constructive role Muslims have in America. He requires expeditious release and involvement in a supportive program to assist with socialization and developing skills to work and study as a citizen.
3. He requires a comprehensive and intense therapy program that focuses on preventing radicalization, protecting adolescents from recruitment by hostile entities, and temptation to travel overseas conflicts.  Such programs involve multiple modalities including individual and group therapy, education, and religious services and teaching.

**Summary**

Mohammed Hamzah Khan requires intense education, training, and therapy to further protect him from recruitment by hostile entities and prevent radicalization. He exhibits conduct and behavior that is not violent or aggressive. His demeanor, statements, and conduct are consistent with a characterization that he has not been "radicalized."  He lacks age-appropriate understanding of social and political issues and requires broader education and cultural exposure than he received during high school and adolescence.  He also lacks critical thinking skills and understanding to discern the dangers presented by ISIS and other hostile entities. A comprehensive and multifaceted education, training, and therapy program provides necessary opportunities to broaden his perspectives and gain vital skills. Such programs generally are conducted for many months and involve group activities and other social events that help expand adolescents' and young adults' awareness.

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential & Privileged*

I am pleased to assist with his case and am providing these statements to the best of my knowledge and experience without coercion or influence. If you have any questions, please do not hesitate to contact me.


Respectfully,

Stephen N. Xenakis, M.D.
Brigadier General (Ret), U.S. Army

6