```
1              IN THE UNITED STATES DISTRICT COURT
            OR THE NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION

3
   UNITED STATES OF AMERICA,        )
4                                   )
                    Plaintiff,      )
5                                   )
   -vs-                             )
6                                   )  Case No. 14 CR 564
                                    )
7  MOHAMMED HAMZAH KHAN,            )  Chicago, Illinois
                                    )  November 18, 2016
8                   Defendant.      )  1:30 p.m.
                                    )
9
                    TRANSCRIPT OF PROCEEDINGS
10        BEFORE THE HONORABLE JOHN J. THARP, JR.

11 APPEARANCES:

12 For the Plaintiff:    HON. ZACHARY T. FARDON
                         UNITED STATES ATTORNEY
13                       BY:  MR. RICHARD MATTHEW HILLER
                              MR. SEAN K. DRISCOLL
14                       219 South Dearborn Street
                         Suite 500
15                       Chicago, Illinois  60604

16
   For the Defendant:    DURKIN & ROBERTS
17                       BY:  MR. THOMAS ANTHONY DURKIN
                              MS. ROBIN VALENTINA WATERS
18                       2446 North Clark Street
                         Chicago, IL 60614
19
   Court Reporter:       KELLY M. FITZGERALD, CSR, RMR, CRR
20                       Official Court Reporter
                         United States District Court
21                       219 South Dearborn Street, Room 1420
                         Chicago, Illinois  60604
22                       Telephone:  (312) 818-6626
                         kelly_fitzgerald@ilnd.uscourts.gov
23

24

25
```

1    (Proceedings heard in open court:)

2         THE CLERK:  14 CR 564, U.S.A. v. Khan.

3         MR. HILLER:  Good afternoon, Your Honor.  Matt Hiller

4    on behalf of the United States.

5         THE COURT:  Good afternoon.

6         MR. DURKIN:  Good afternoon, Judge.  Tom Durkin and

7    Robin Waters on behalf of the defendant who is present and in

8    custody.

9         THE COURT:  Good afternoon.

10         PROBATION OFFICER CHRISTIANSEN:  Good afternoon,

11    Judge.  Jason Christiansen, U.S. probation.

12         PROBATION OFFICER POHLMEYER:  Good afternoon,

13    Your Honor.  Aron Pohlmeyer on behalf of U.S. probation.

14         THE COURT:  Good afternoon.

15         Are we ready to proceed with sentencing?

16         MR. HILLER:  We are, Your Honor.

17         MR. DURKIN:  Just one second, Judge.  There was a

18    question raised just a second ago.  Could I have a second to

19    talk to Mr. Hiller?

20         THE COURT:  Sure.

21      (Off the record.)

22         MR. DURKIN:  Could I just have a minute to explain

23    this question?

24      (Off the record.)

25         MR. DURKIN:  Judge, could we have five or ten

1    minutes?  I apologize.  There was a question raised that I

2    have discussed with Mr. Hiller, but I just need to talk to the

3    client in private, if I could.

4           THE COURT:  All right.

5           MR. DURKIN:  I apologize.

6           THE COURT:  We'll take a brief recess.

7    (Recess.)

8           THE COURT:  All right.  Ready to move forward?

9           MR. DURKIN:  Yes, Judge.

10           THE COURT:  All right.

11           MR. DURKIN:  Thank you.  I apologize.

12           THE COURT:  That's all right.

13           The first thing we need to do is, Mr. Khan, could you

14    please stand.

15           And, Ms. Rone, would you please swear in Mr. Khan.

16           THE CLERK:  Please raise your right hand.

17    (Defendant sworn.)

18           THE COURT:  All right.  I want to start by making

19    sure I have reviewed everything that has been submitted.  In

20    addition to the plea agreement, I have reviewed the

21    presentence investigation report, the probation officer's

22    sentencing recommendation, the government's version of the

23    offense, the government's sentencing memorandum, the

24    defendant's sentencing memorandum, the defendant's

25    clarification to the PSR, the defendant's supplemental

1  sentencing submission, 15 letters of support that have been

2  submitted on behalf of the defendant.  I have also reviewed

3  the defendant's prior motion to modify the conditions of

4  pretrial detention and the government's response to that

5  motion.

6          Is there anything that either party has submitted

7  that I did not include in that?

8          MR. HILLER:  No, Your Honor, not that I'm aware.

9          MR. DURKIN:  I don't think so.  Judge, I don't

10  believe we've received the recommendation though, the

11  probation recommendation.

12          THE COURT:  That was part of what was required to be

13  provided.

14          Do you --

15          PROBATION OFFICER CHRISTIANSEN:  I can have it

16  submitted immediately, Judge.

17          THE COURT:  All right.  I've got a copy here

18  somewhere.  You can take a look at it for the moment.

19  Probation can get you a copy, but for the moment --

20          MR. DURKIN:  That's fine.

21          THE COURT:  -- you can take a look at that.

22          All right.  Does either party intend to present any

23  witness testimony or call anyone to speak on behalf of

24  Mr. Khan?

25          MR. DURKIN:  No.

1          MR. HILLER:  No, Your Honor.

2          THE COURT:  All right.  I'm going to start then where

3     the Supreme Court has directed trial courts to begin all

4     sentencing proceedings, and that is by correctly calculating

5     the applicable range under the United States Sentencing

6     Guidelines.

7          As I understand it, there are -- the defendant had no

8     objections to the calculation of the guidelines set forth in

9     the presentence investigation report, correct?

10         MR. DURKIN:  That's correct.

11         THE COURT:  And the government objected to the

12    recommendation that the enhancement for involving the use of

13    minors in the offense, the PSR does not include that.  The

14    government believes that should be included, correct?

15         MR. HILLER:  That's correct, Your Honor.

16         THE COURT:  All right.  Having reviewed that issue,

17    my conclusion is that the enhancement does apply, both by the

18    terms of the Application Note to Section 3B1.4 and on the

19    strength of the Seventh Circuit's opinion in *United States v.*

20    *Ramsey*, which is 237 F.3d 853, which confirm that when a

21    defendant's affirmative actions involved minors in his

22    criminal activities, the application is appropriate.  Here,

23    Mr. Khan acknowledged in his plea agreement that he attempted

24    to provide material support in the form of personnel,

25    including himself and two other individuals.  He expressly

1    acknowledged that in the factual basis to his plea agreement.

2          In addition, he also acknowledged in that factual

3    basis that he obtained a job for the purpose of earning money

4    to pay for not only his own ticket but the tickets of those

5    other two minors, that he did, in fact, pay for the tickets of

6    the other two minors, that he, in fact, booked the flights for

7    the other two minors and that he also arranged for the

8    issuance of visas for not only himself but the other minors.

9    That -- all of those facts I think clearly suffice to show

10   that Mr. Khan took affirmative actions to involve minors in

11   his criminal activities, and the enhancement I think must be

12   applied on that basis.

13         I'll also note that in *Ramsey*, the Seventh Circuit

14   specifically rejected the argument advanced by the defense

15   that Congress didn't authorize an enhancement for defendants

16   under the age of 21.  In fact, the Seventh Circuit

17   specifically rejected that argument in *Ramsey*.

18         All of that said, as I'll go through the guideline

19   calculation in a moment, the application of that enhancement

20   is not material to the determination of the applicable

21   guideline range here because whether that enhancement applies

22   or not, the applicable guideline range here is the range that

23   is capped at the statutory maximum penalty that can be imposed

24   based on a conviction for this offense, which is 15 years.

25         So for the record, the presentence investigation

1    report reflects a total offense level of 37 and a criminal

2    history category of VI.  The government's objection to the PSR

3    guideline calculation is sustained.  I find the correct

4    calculation to be offense level 39, not level 37, and criminal

5    history category VI.  But for the statutory maximum penalty

6    that could be imposed on this conviction, that would yield a

7    range of 360 months to life imprisonment.  But, again, that

8    range is capped by the statutory maximum of 15 years, or 180

9    months imprisonment.  So let me work through this calculation

10    again for the benefit of the record.

11         This is based on the November 2016 guideline manual.

12    The base offense level is 26 pursuant to Section 2M5.3(a).

13    That offense level is increased by two pursuant to

14    2M5.3(b)(1)(E), which is a provision which reflects the

15    provision of support to assist a violent act.

16         There is a victim-related adjustment of 12 levels

17    pursuant to Section 3A1.4(a) because the offense involved

18    terrorism as that term is defined in 18, United States Code,

19    Section 2332b(g)(5).  And as I've just noted, there is also a

20    role-in-the-offense adjustment of 2 pursuant to Section 3B1.4

21    for involving minors in the commission of the offense.  There

22    are no obstruction of justice enhancements, and that leaves us

23    with an adjusted offense level of 42.  The PSR recommends and

24    I concur that a three-level reduction for acceptance of

25    responsibility is appropriate.  That gives a final offense

1  level of 39.  There are no criminal history points, but the

2  defendant is in criminal history category VI by operation of

3  Section 3A1.4(b).  That makes -- the applicable guideline

4  range is 180 months pursuant to Section 5G1.1(a) which is the

5  provision that caps the guideline range at the statutory

6  maximum.  The supervised release range under the guidelines is

7  one year to life.  There is a fine range of 20,000 to

8  $200,000.

9        Those are the calculations of the guideline range.

10  Does any party have any comment or disagreement other than as

11  you've already objected to the calculation of the guideline?

12        MR. HILLER:  No, Your Honor.

13        MR. DURKIN:  No, Your Honor.

14        THE COURT:  All right.  Then let's move on -- well,

15  actually before I move on to the discussion of the 3553(a)

16  factors, I also note that with respect to sentencing

17  agreements that bear on the sentence to be imposed in this

18  case potentially, the government has agreed in the plea

19  agreement based on cooperation that Mr. Khan had provided at

20  the time of the plea and was expected to continue to provide

21  and my understanding is has continued to provide that the

22  government will move for a sentence -- that the Court impose a

23  sentence not at the guideline range of 180 months but for a

24  sentence of 60 months based on Mr. Khan's cooperation.

25        Assuming the government makes that motion, the

1  defendant still has the right to seek a lower sentence and to

2  argue for a lower sentence.  The defendant has also, as I

3  understand it, waived -- if the government makes that motion,

4  has waived most of his appellate rights.  He has no right to

5  appeal the sentence.  His only appeal would be limited to an

6  appeal based on involuntariness or ineffective assistance of

7  counsel.

8          If the government does not make a motion based on the

9  defendant's cooperation, the plea is still binding, and the

10  parties are free to argue for any sentence.  And there is a

11  joint agreement between the parties that the sentence should

12  include a term of supervised release of at least 180 months,

13  but the Court is not bound by that joint recommendation.

14          Do I have those agreements correct?

15          MR. HILLER:  You do, Your Honor.

16          MR. DURKIN:  Yes.

17          THE COURT:  Okay.  All right.  Then let's proceed to

18  the discussion of all of the other factors that the Court is

19  required to consider under Section 3553(a) of Title 18 in

20  determining the appropriate sentence to impose in this case.

21          I'll hear first from Mr. Hiller for the government,

22  then Mr. Durkin for the defendant.

23          And then, Mr. Khan, you will have the right but not

24  the obligation to address the Court directly if you wish to do

25  so, all right.

1          Mr. Hiller.

2          MR. HILLER:  Thank you, Your Honor.

3          I will not repeat the arguments raised in the

4    government's sentencing memorandum.  But to highlight the 3553

5    factors, the government believes that a 60-month sentence of

6    imprisonment followed by 15 years of probably the most

7    intensive and customized supervised release ever imposed in

8    this district is not only imminently fair but it's also

9    necessary in light of the seriousness of the offense.  Such a

10   sentence, it strikes the right balance between Hamzah's

11   background, which the government has outlined extensively in

12   the sentencing memorandum; the graveness of his attempted

13   plan, which is obviously addressed at length in the

14   government's version of the offense.  And it also addresses

15   the value and the importance of his cooperation.

16         And Hamzah's cooperation is important for several

17   reasons.  First and most importantly, it benefitted active

18   criminal investigations, and two of those investigations -- or

19   the two investigations are described at length in the

20   sentencing memorandum.

21         He benefitted investigations of important ISIL

22   targets, two recruiters who are also located in

23   ISIL-controlled territories and were fighters for ISIL.  And

24   also -- his cooperation also benefitted an important American

25   foreign partner, and so he deserves credit for that.

1      His cooperation is also important because it's

2   hopefully telling.  It's the first concrete step that Hamzah

3   has taken since October 4, 2014 in rejecting ISIS and

4   rejecting ISIL.

5      We are cautiously optimistic -- and that's the

6   critical importance of the lengthy supervised release -- that

7   this is indicative of his future, that the education and

8   things that Mr. Durkin addresses in his pleadings or his

9   briefing will be taken advantage of, that he will speak out

10  against ISIL and the recruiting and the propaganda that led

11  Hamzah to attempt to join ISIL in Syria.

12     It's also important to highlight that his agreement

13  and his attempt to cooperate publicly against a foreign

14  terrorist organization like ISIL and to attempt to cooperate

15  against the religious clerics, particularly Mizanur Rahman,

16  they kind of give ISIL's message that religious credence, the

17  obligation that Hamzah talked about in his letter and being

18  willing to stand up in a U.S. or even a foreign courtroom to

19  testify against ISIL operatives deserves significant credit.

20  I mean, Hamzah left, or attempted to leave on October 4th

21  because of what he believed was a religious obligation to

22  support the Caliphate.  And overcoming that and willing to

23  testify against that is important.

24     That being said, cooperation alone cannot undo what

25  Hamzah attempted to do.  He attempted to support an incredibly

1   barbaric foreign terrorist organization, and his cooperation

2   does not completely undo that. It also doesn't undo the fact

3   that he was willing to give his life and the lives of his

4   siblings for that organization, and that's an outcome that

5   undoubtedly would have happened but for the FBI's

6   intervention.

7           So in order to adequately address deterrence and the

8   seriousness of the offense, the government believes a

9   significant term of imprisonment is required, and it should be

10  coupled with an extremely intensive period of supervised

11  release. And that's why the supervised release terms were

12  designed in which they were. They're long. They're hard, but

13  they're set up with sunset provisions to incentivise him and

14  reward him for good behavior if he is seeking his education,

15  and if he is seeking employment and if he is complying with

16  those intensive terms that probation will enforce, he should

17  receive credit, but he must accomplish and overcome a lot of

18  obstacles before those conditions are released. And we

19  believe that the 60-month sentence combined with the 15 years

20  of supervised release provides the best balance in light of

21  all of the facts before this Court today.

22          Thank you.

23          THE COURT: Thank you.

24          Mr. Durkin.

25          MR. DURKIN: Well, Judge, I don't want to have to

1  reiterate our pleading either like Mr. Hiller said, but

2  there's a couple of things I want to point out.

3          I started out by saying this is a difficult case,

4  extremely difficult case, and I think this goes to 3553(a),

5  the nature and circumstances of the offense. It's an awful

6  lot on both ways. But as I submitted in my memorandum, I

7  think this is one of the problems trying to fit foreign policy

8  into a criminal case. And that's just a fact. I'm not

9  arguing it. I don't want to belabor it. I'm not condemning

10  the government or any such thing, but we are dealing with an

11  American citizen, a naive one, a foolish one, who was entirely

12  seduced by online recruiters and provided with a cause bigger

13  than himself. And that's a universal event. That's been

14  going on for centuries. It goes to the lack of critical

15  thinking skills that I have mentioned, again, which bases my

16  request that sooner or later he has to be released, and he has

17  to be trusted, and he has to change.

18          The whole idea of trying to balance the barbarousness

19  of ISIS against an 18-year-old who is seduced by very slick

20  online recruiters -- and that's one of the reasons I

21  submitted -- resubmitted our bond motion. You know, *Dabiq*

22  magazine, we've shown you the slickness of that.

23  President Obama, which I pointed out in the bond motion,

24  shortly before Mr. Khan and his sister and brother are

25  arrested, goes to the United Nations and talks about

1   brainwashing or propagandized American youth and how we have

2   to do something.  Not long after he is arrested, Attorney

3   General Holder with President Obama's backing announces that

4   there's going to be a White House summit on countering violent

5   extremism.  And I point that out -- and that summit was

6   delayed considerably, but it's now beginning to happen, as I

7   said in my memo, and there are at least three pilot programs

8   in the United States -- Boston, Minneapolis, Los Angeles --

9   with respect to programs for countering violent extremism.

10          The other thing I pointed out in my memo in this

11  regard is that while it is certainly easy for everyone to

12  barbarize ISIS today in terms of its being a threat to the

13  United States because of some of the attacks that have

14  happened in San Bernardino and so forth, I do point out in my

15  memo -- and, again, this is not to belabor, and it's certainly

16  not in any way to argue in favor of ISIS -- but I do think if

17  you put this in the right context, the comments I made in my

18  pleading about the report from the Brookings institute and the

19  Princeton scholar Cole Bunzel about what ISIS's status was

20  around this time was more of the Caliphate.  And as is

21  frequently the case, in cases that don't go to trial, I

22  believe we could have shown a considerable, if not major,

23  portion of his desire and his sister and his other brother,

24  and you know how much the sister had a part in this, was for

25  the Caliphate.  And, again, that's not -- I mean, you know,

1   it's an absurd Caliphate.  It's an absurd Caliphate even under

2   Islamic theology, as I understand it.  But for an 18-year-old

3   in Bolingbrook with his background and education, it was very

4   alluring.  The whole concept of going somewhere for a

5   religious purpose with higher ideals and the youthful

6   sophomoricness of, you know, I'm leaving this country because

7   it's so filthy in its values and so forth, as I said also in

8   my memo, anybody that has raised teenagers certainly

9   understands how that works, at least that kind of looking for

10  something else and how stupid the elder generation is and how

11  stupid everything else in the world is.  That's not to excuse

12  it.  None of this is an excuse, but it goes to context I

13  think.

14          The fact that the people of ISIS are crazy and

15  barbarous is a bigger fact today than it was then.  And,

16  again, I just don't want to belabor it.  But I genuinely think

17  that his motivation was religious and it was misguided.  And

18  would he have been dead?  Probably.  I do agree with the

19  government on that, but, you know, in many ways for different

20  reasons.  Even in his statement, he talked about a number of

21  things when he was first interviewed by the FBI that he could

22  have done or expected to do.  One was medical.  There were a

23  bunch of other social service issues, and then he said and

24  probably some military training or words to that effect.  So I

25  get it.  But that goes I think to the whole difficulty of this

1   case.  And I don't know whether you took the time to read my

2   law review article that I cited, but I think it's also

3   difficult and dangerous to discuss war rhetoric or to use

4   rhetoric in the criminal justice system.  We're old enough to

5   see what's happened with wars on crime, wars on drugs, wars on

6   terror.  Criminal courts aren't designed to fight wars.  And I

7   credit the government enormously for accepting that here in

8   one way, shape or form.

9           I give tremendous credit, as I do in my pleading, to

10  the U.S. Attorney's Office in Chicago for having the good

11  sense to be reasonable.  That has not been the case all over

12  the country.  It's not necessarily even the position of the

13  National Security Division in Washington.  But much to its

14  credit, and the Khan family is extremely grateful for the

15  wisdom, for some short -- no other term I think would apply to

16  it, and I think it's largely Mr. Hiller, to see both sides of

17  this case.

18          And I think that's where we're at.  I think we have a

19  case where neither side is that far apart.  I'm only asking

20  for 40 months, and I have I think a very reasoned approach for

21  the 40 months, which is he needs to go to college desperately.

22  And is it necessary as a deterrent to add 20 more months to

23  that and run the risk that he gets further radicalized, if

24  that's the case, in a prison?  I cited Dr. Xenakis' reports.

25  I cited some scholarly journals about that.  That's a real

1    danger.  It's hardly a coincidence that a considerable number

2    of radical preachers in the Middle East were all radicalized

3    in prison.  I don't think any more prison beyond what I'm

4    asking for will do any good, and I was very careful at what I

5    selected because I think 40 months -- if the only reason we're

6    talking 60 is for general deterrence, I have a hard time

7    imagining that somebody is going to calculate whether, if he

8    gets on a plane and wants to go to Istanbul to try to get into

9    Syria to go fight with ISIS, that he's going to try to

10   calculate, well, let's see, kid in Chicago got this, and

11   somebody else got -- I just don't see the difference.  I don't

12   see the difference between 40 and 20 as meaningful in that.

13        And that's my request.  I think it's -- I think what

14   I'm asking for is not unrealistic in that regard.  I don't

15   think deterrence is an overriding factor here in light of all

16   the circumstances if we're talking 3553(a).  I think it's

17   obviously a point you have to consider.  But I don't think

18   there's any specific deterrence you have to worry about

19   because it's certainly not going to be helped by 20 more

20   months, and from a general deterrence standpoint, I think it's

21   as much the same.  I mean, 40 months for a first-time offender

22   who committed an offense when he was 19, and, you know, when

23   this started with his sister's involvement two years before

24   when he wasn't even an adult, I think a 40-month sentence is

25   -- I'm not saying it's harsh by any stretch of the imagination

1   because I understand the guidelines and you're correct on the

2   guidelines. But there are all kinds of times when the

3   guidelines just don't fit a case, and if there was ever such a

4   case, it doesn't fit this case. It just doesn't. This is a

5   terrorist case in the most technical sense of the term. And I

6   think that's very, very tricky. And, again, I think it's part

7   of this problem with going -- putting -- mixing up foreign

8   policy with the criminal justice system, and I think it's

9   tricky. These are difficult times we're in, but people have

10   always been in difficult times. I couldn't help but think

11   today, I read the *Washington Post*. There's an article in the

12   *Washington Post* today that they're citing *Korematsu* as a basis

13   for permitting a registry of Muslims in this country. Now,

14   I'm not saying that's going into effect, and the article goes

15   to that point. It was not an official transition team person,

16   but it was a high-up contributor to a pack for the

17   president-elect. I'm dumbfounded by that. I'm absolutely

18   dumbfounded that in civil liberties discourse in this country

19   today we could be talking about *Korematsu* as being precedent

20   for anything.

21         And that's the problem. That's the problem with the

22   war on terror in the criminal context. It's -- we

23   shouldn't -- and I hope you won't and I trust you won't --

24   give into, like, fear because that's what would happen if

25   somehow we were to apply the guidelines, if somehow we were to

1    have to scare everyone.

2            The fact of the matter is that Hamzah Khan is either

3    going to be okay or he's not.  And the choice is his.  As

4    Mr. Hiller said, these are the most severe supervised release

5    restrictions I have ever seen.  I think I would venture to say

6    they are the most severe.  I could not disagree more with

7    probation's recommendation of life.  That would be a disaster.

8    That would be a -- that would give in to the very fear that

9    drives the same issue with talking about *Korematsu* and

10   registries and everything else:  Let's keep an eye on him to

11   make sure nothing ever happens.  And that's insane, with all

12   due respect.  And it's not only insane, it's dangerous.  It is

13   very dangerous to suggest that we have to then keep an eye on

14   somebody.  We have to keep some type of preventative

15   detention.  And you know as well as I do that that's right

16   around the corner in this country because we don't know what

17   we're going to do with Guantanamo.  And these issues of

18   incredible civil liberties importance are being litigated an

19   issue at a time.

20           And I'm not trying to say the sky is falling on this

21   case; just the opposite.  You know, five years is -- you know,

22   can we live with it?  Of course we can live with it.  We can

23   live with anything.  But it's do we give in?  Do we give in to

24   the fear that we just can't trust that this kid is ever going

25   to change?  That's a real scary country for me to live in.

1   It's a real scary thought that we're going to have a
2   20-year-old kid on lifetime supervised release for wanting to
3   go join the Caliphate.  That is very frightening to me.  And I
4   think the government even acknowledges that.  I mean, the plea
5   agreement called for, what, a minimum of 15 years.  There's
6   legions of statistics even in just regular criminal justice
7   statistics about the recidivism and dangerousness of people
8   once they get into their 30s and 40s.  You know, we don't
9   demand of our criminal justice system or our law enforcement
10  system that we stop every murder.  We don't try to -- and God
11  knows in Chicago we don't do much of a job of that at all.
12  And we don't have that same demand because we haven't made a
13  political promise that there won't be any more attacks.  And
14  to give in to the idea of a lifetime supervised release is
15  part of this whole fear of what happens if something goes
16  wrong, and so, therefore, we're going to have to try to ensure
17  that no attack ever takes place, I don't know how we do that
18  because there's too many other societal issues connected to
19  that, but we certainly shouldn't try to do it with the
20  criminal justice system.  And, again, I'm only speaking to the
21  idea of a lifetime supervised release.  I think that's
22  incredibly dangerous, and I'm really disappointed that the
23  probation office would react to that, particularly when
24  they're going to be the same people conducting the CVE, or the
25  Countering Violent Extremism.  That doesn't mesh in my mind

1   with trying to help somebody.  We're going to help you, but,

2   you know, we're going to put you on a real short leash.  We're

3   not going to give you any incentive to get off of these

4   conditions.  I mean, the whole negotiation over these

5   conditions had to do with giving Mr. Khan some incentive to

6   show that he doesn't need these conditions, and I think 15

7   years is more than sufficient to do that.  And I think there's

8   just such great supervision you can impose during that time

9   that would be really helpful.

10          I don't think we should lose our bearings over cases

11  like this, and these cases have that danger.  There have been

12  some heavy sentences in these cases.  I think usually they

13  involve a lot worse things than this and a lot more evidence

14  of danger.  But I think this is a real dangerous time to

15  attempt to fight a war.  We still have individualized

16  sentencing, and I know you know that.  I'm not trying to

17  demean any of this, but there's just -- I think I use the term

18  "atmospherics" in our pleading.  Those atmospherics make this

19  difficult today.

20          This is an important case.  It's an important case to

21  the government.  I understand that.  But it's also an

22  important case to all the supporters that came for the Khan

23  family.  This is a very, very important case I think even for

24  Mr. Khan.  I have seen your remarks in the other sentencings

25  about how maybe he could appreciate the justice he has

1    received, and I trust that's what he will get.

2              And I'll leave it at that.  I think he deserves a

3    chance.  I think he deserves mercy.  I think he deserves the

4    training, but most importantly, I think he desperately needs

5    to go to college as soon as he possibly can.  And that's why I

6    selected August of next year because that's what he needs.

7    His best thinking got him here.  And if he doesn't change his

8    thinking, then it's going to be only a matter of time.  But I

9    wouldn't, if I were king, and nobody has even suggested --

10             THE COURT:  Thanks for the promotion.

11             MR. DURKIN:  Pardon me?

12             THE COURT:  Thank you for the promotion.

13             MR. DURKIN:  That I wouldn't run the risk of more

14   time in prison.  I would rather run the risk to see whether he

15   could get his act together.  I think he will, and I think he

16   deserves that chance.

17             Thanks.

18             THE COURT:  All right.  Mr. Khan, could you come

19   forward, please.

20             All right.  Mr. Khan, you have the right but not the

21   obligation to make any comments you wish to.  So you have the

22   right to do so but in no way are you required to make any

23   comments or remarks at all.

24             THE DEFENDANT:  Yeah.  I don't wish to make any

25   statements right now.

23

1          THE COURT:  All right.  Then I'm going to discuss the
2    factors that I think are material to the sentence to be
3    imposed in this case.
4          Under Section 3553(a) of Title 18, I am required to
5    impose a sentence that is sufficient but not greater than
6    necessary to serve the objectives of -- that are set forth in
7    that statute, which include the need for the sentence imposed
8    to reflect the seriousness of the offense, to promote respect
9    for the law and to provide just punishment for the offense, to
10   afford adequate deterrence to criminal conduct, to protect the
11   public from further crimes of the defendant and to provide the
12   defendant with needed educational or vocational training,
13   medical care or other correctional treatment in the most
14   effective manner.  These four considerations align with the
15   four generally recognized objectives of criminal sentencing,
16   which are retribution, deterrence, incapacitation and
17   rehabilitation.  And federal courts are required to fashion
18   sentences that will achieve all of those purposes to the
19   extent that they are applicable in a given case.
20          To do that, the Court must consider the nature and
21   circumstances of the offense of conviction and the history and
22   characteristics of the defendant.  The Court is required to
23   consider a variety of factors, such as the kinds of sentences
24   available under the law, and that includes the applicable
25   sentencing guideline range and the policy statements that

1    inform the operation of the sentencing guidelines, the need

2    for the sentence imposed to avoid unwarranted disparities

3    among defendants with similar records who have been found

4    guilty of similar conduct, and in appropriate cases the need

5    to provide restitution to victims of the offense.

6           Many of the factors that bear on these objectives and

7    many of the objectives themselves are overlapping.  Some of

8    the factors relevant to those objectives point in different

9    directions, and it is the Court's task to balance all of those

10   factors in a manner that best promotes all of the sentencing

11   objectives as they are relevant in this case.

12          In doing that, I start with the nature and

13   circumstances of the crime committed by Mr. Khan.  And within

14   that heading, I start with the seriousness of the offense.

15   And I'm not going to belabor the point.  Mr. Khan set off to

16   join and aid a terrorist organization that believes it's

17   appropriate and believes it's indeed holy to kill anyone who

18   disagrees with its religious dogma, not just people of other

19   faiths, such as Buddhists or Jews or Christians, but even

20   other followers of Islam who deviate in any way from ISIL's

21   interpretations of the Quran.  That organization is a

22   terrorist organization, and the fact that its message is

23   religious or purports to be religious rather than overtly

24   political is a distinction without a difference.

25          I understand, Mr. Durkin, your point on some level

1  that Mr. Khan was inspired to join the Caliphate, but this is

2  an organization where the distinction between the Caliphate

3  and the distinction between a terrorist organization is

4  nonexistent.  To want to join the Caliphate is to want to join

5  jihad, which is war.  It's not the United States that has

6  interjected metaphors of war into the equation.  The war is --

7  being fought by ISIL is jihad, and that can't be separated

8  from the purpose of this organization.  There wasn't a

9  beneficent purpose to the organization and a maleficent

10 purpose to the organization.  This is one organization with

11 one objective, and that objective is jihad.  That's the

12 organization, Mr. Khan, that you set off to join.  I

13 understand at age 19, 18, 17 when you were contemplating these

14 things that you were young and impressionable, so much more so

15 were the individuals that I think you were responsible for

16 ultimately being with you in the airport on your way to Turkey

17 in October of 2014.

18          So I find the seriousness of this offense to be quite

19 troubling, and I don't believe for a second that you really

20 believe that you would go to ultimately Syria and work as a

21 chef or work as a cook, that this is an organization that

22 would respect that kind of a wish of an able-bodied 20 year

23 old.  And as you told me during your plea, you were prepared

24 to do anything called upon, including taking up arms.  So,

25 again, this was a serious offense, and I think you understood

1   what you were effectively signing up for when you headed to

2   O'Hare Airport that day.  You were 19 years old.  You have

3   been -- you have led by almost any measure a very sheltered

4   life that, I completely agree with Mr. Durkin's assessment,

5   leaves individuals like yourself vulnerable to be preyed upon

6   by criminals, to be preyed upon by terrorists and be recruited

7   into their ranks.  I also agree with Mr. Durkin that that does

8   not excuse your conduct.  At 19 years old, for better or

9   worse, we consider people adults, and they are accountable for

10  their conduct.

11          So against those choices that you made, I also do

12  consider the fact that you have absolutely no criminal record.

13  The people who know you best, your parents, your friends, your

14  relatives, the people who are here supporting you today, the

15  people that have written letters to the Court I have no

16  question were absolutely dumbfounded by your actions, which,

17  by all accounts, are completely at odds with what everyone

18  understood you to be and describes you to be, as a caring

19  human being capable of love and friendship and generosity.

20  And I have great difficulty reconciling those two pictures, a

21  young man willing to go and join an organization whose

22  professed goal is to exterminate anyone who disagrees with

23  their religious dogma with the young man who tutors children

24  in math, plays basketball with his friends in high school,

25  accompanies his father to work.  Those are two portraits that

1    are very difficult to reconcile, but that's what I'm required

2    to do in assessing what the objectives of this sentence are.

3        I agree with Mr. Durkin that this is a case where

4    deterrence perhaps is not the foremost consideration.  While

5    obviously there does need to be a sentence imposed that will

6    speak to not only you but to others and will speak with a

7    voice that says this is a serious crime, this is conduct that

8    cannot be tolerated, the real issue here I think in assessing

9    these factors is risk and what is the risk that you pose to

10   the public going forward.  And I agree again with Mr. Durkin,

11   and I don't think the government disagrees either, that a

12   sentence that never offers you the opportunity to prove

13   yourself is a sentence that will, in all likelihood, be

14   counterproductive and will increase the risk as opposed to

15   decreasing the risk.

16       There has to be a prison sentence here.  No one

17   disputes that.  There has to be a significant term of

18   supervised release.  No one disputes that.  And there's --

19   again, I agree with much of what Mr. Durkin has said without

20   endorsing any of the issues raised, the contextual issues that

21   have been raised about the introduction or the juxtaposition

22   of politics in the criminal justice system.  The question here

23   and the two competing visions of what's appropriate here, not

24   that either of those define the range that the Court is bound

25   by, are separated by a question of 20 months of imprisonment.

1    And it is difficult to -- when viewed at that level to discern

2    a meaningful distinction that is going to meaningfully affect

3    the calculus of when adequate deterrence has been reached,

4    when adequate incapacitation has been reached in the

5    relatively narrow difference between the parties with respect

6    to the sentence to be imposed in this case.  I think that the

7    parties are in the appropriate neighborhood.  I think that the

8    praise that Mr. Durkin has directed to the United States

9    Attorney's Office here and its ability to consider this case

10   in its full context is appropriate and deserved.  I think the

11   government has taken a very restrained, principled and

12   compassionate approach to the prosecution not only of this

13   case but of the other individuals who were involved in this

14   conduct.

15          So when I sit here and I assess what is the prison

16   sentence that is necessary, the question for me comes down to

17   the question of, you know, what is -- is there a basis to

18   think that an additional 20 months in prison is going to make

19   a meaningful difference in the risk that Mr. Khan poses to

20   society?  I don't think it will.  Mr. Khan committed this

21   crime when he was 19 years old.  He's never posed any other

22   danger to society.  And under -- even the level that the

23   parties have agreed to, he's going to be under strict and

24   extensive supervision for an extended period of time.

25          I agree again with Mr. Durkin that this crime is in

1   part explained by and due to the cloistered and sheltered

2   existence that Mr. Khan has led which left him ill-equipped to

3   address the -- or think clearly about the proposals that were

4   being made to him.  Again, it does not mean he's not

5   responsible for those decisions, but the question, again, is

6   how do we best remedy the problem that led him to the

7   decisions that he has made.  And I don't think that imposing

8   years and years of prison time is a method that is best

9   calculated to reducing the threat that -- and the risk that

10  Mr. Khan poses.

11          We are prognosticating here to a large degree, and we

12  can't know for certain what the future holds.  Mr. Khan, as I

13  sit here and I talk to you right now, I don't have a crystal

14  ball.  I can't read your mind.  I don't know if you're sincere

15  or not.  I agree with the government that you have done what

16  you are able to do to demonstrate as clearly as you can

17  through your actions, if not your words, that you have come to

18  understand the foolishness of your course of conduct.  But

19  ultimately you're going to have to demonstrate that, and

20  you're going to have to live that.  And your best chance for

21  doing that and our best chance for you doing that I don't

22  think comes after years of additional incarceration in this

23  case, which while for some offers them opportunities that end

24  up -- and I intend no indictment of our prison system, but

25  this isn't what our prison system was made to do, to instill

1    the maturity and judgment and life skills necessary to address

2    these kinds of recruitment.  That's not what the prison system

3    does.  What I think will more likely accomplish those

4    objectives is treatment, education and supervision, the things

5    that are going to be central hallmarks of a term of supervised

6    release in this case.

7            Trust but verify.  You've got to be given the

8    opportunity to learn and to be exposed to a broader world than

9    you have been exposed to so that you understand the

10   limitations and the defects in the presentations that have

11   been made to you about this religious utopia.  Those are not

12   skills that you're going to get by spending years more in

13   prison.  Those are skills that you're going to get by going to

14   college, by undergoing counseling, by having exposure to

15   family and friends who live responsibly in this world who can

16   mentor you and continue to teach and guide you and by having a

17   system in place that assures that if, despite our efforts, you

18   don't seem to be getting it, if, despite our best efforts,

19   you, in fact, do not and have not been sincere in your

20   rehabilitation, then we will know that, and we will know that

21   we have made the wrong call before it is too late and before

22   anyone is harmed.

23           So I think the appropriate sentence in this case, I

24   am going to impose a sentence of imprisonment that has been

25   requested by the defense.  I'm going to impose a sentence of

1  40 months of imprisonment, which, assuming your good conduct,

2  will allow you to begin college in August of 2017.  I don't

3  want to be confused as suggesting that college itself is a

4  panacea.  It's one piece of the puzzle.  It's one ingredient

5  that is necessary but not sufficient to ensure that Mr. Khan

6  does not, in fact, present a risk to the public going forward.

7          So I'm going to impose the sentence of 40 months.

8  Mr. Khan has served more than half of that.  And, again,

9  assuming his good conduct for the rest of his prison term,

10  he'll be out on supervised release in time to begin going to

11  college.

12          I want to talk about -- the terms of supervised

13  release that are set forth in the government's submission are

14  generally I think adequate in some cases, though I have some

15  specific questions about the implementation of several of

16  these conditions, and I want to talk about that first.

17          I guess before we get to the specific conditions,

18  however, the term of supervised release, the parties have

19  agreed that it should be a minimum of 15 years.  While I in no

20  sense disagree with Mr. Durkin's assessment that a term of

21  life supervision is inappropriate here, the issue here is, is

22  in my view, again, not the question of incapacitating and

23  imprisoning Mr. Khan for an extended period of time but

24  trusting and verifying.  At the end of 15 years, Mr. Khan will

25  be roughly 35 years old.  While that is an age that represents

1    and we all certainly hope will find Mr. Khan with much greater

2    maturity and much better judgment than he has now, that is

3    also a time when the risk of further criminality, the risk of

4    further participation and attraction to this sort of conduct

5    certainly can't be ruled out.

6              So from my view, the term of supervised release needs

7    to be longer than 15 years.  I'm going to impose a modestly

8    longer period of time of 20 years of supervised release which

9    will take Mr. Khan into his 40s.  At that stage I think it's

10   reasonable to believe that we would have a good sense of

11   whether Mr. Khan's remorse, rehabilitation, role in the

12   community, the indicia of his life would be adequate to

13   suggest that further supervision is not necessary.  And it may

14   well be that those factors are evident to everyone's

15   satisfaction before that term of supervised release has

16   concluded.  The agreement of the parties is Mr. Khan will not

17   receive reduction in the term -- or early termination of the

18   term of supervised release for a period of ten years, I

19   believe.

20             MR. HILLER:  That's right.

21             THE COURT:  I may or may not be here in ten years.

22   The same could be said of all of us.  Somebody will be here in

23   ten years.  And if there's an argument to be made --

24             MR. DURKIN:  Your odds are probably better than mine.

25             THE COURT:  Well, we'll see.  If there's an argument

1    to be made that further supervision is not necessary, either

2    Mr. Durkin or someone in his stead will be available to make

3    that argument, and I or someone else in my stead will listen

4    to that argument and consider it.  But at the outset, at this

5    stage, given the uncertainties and the risks and the

6    consideration of the public's safety, I think that a somewhat

7    longer period of supervision should be implemented knowing

8    that that can be revisited and shortened if the evidence is

9    there to do that.  So I'm going to impose the term of

10   supervised release of 20 years.

11           Now, with respect to the conditions of supervised

12   release, I am required to impose a variety of conditions, some

13   of which I'm required to impose, some of which I imposed

14   because they are prudent and I believe appropriate to ensure

15   that effective supervision over that term of supervised

16   release can be accomplished.

17           Mr. Khan, during the term of supervised release, you

18   cannot commit any other federal, state or local crime.

19           You may not unlawfully possess any controlled

20   substance, and you must cooperate in the collection of a DNA

21   sample if the collection of such a sample is required by law.

22   Those are mandatory conditions I am required to impose.

23           Now, there are a number of additional conditions.

24   You will be required to seek, and if you obtain work, to work

25   conscientiously at lawful employment or to pursue

1    conscientiously a course of study or vocational training that

2    will equip you for employment going forward.

3            You must refrain from knowingly meeting or

4    communicating with any person who you know to be engaged or

5    planning to be engaged with any criminal activity.

6            And you must refrain from knowingly meeting or

7    communicating with any person who claims to be associated with

8    a foreign terrorist organization, who claims to be involved

9    with violent acts or advocating for acts of violence and with

10   any persons who are located outside of the United States

11   without the prior approval of the United States Probation

12   Office.  The need for that condition obviously is to preclude

13   communications that led to -- of the sort that led to the

14   commission of the crime that you have been convicted of.

15           You must refrain from possessing any firearm,

16   destructive device or other dangerous weapon.

17           You must participate at the direction of the

18   probation office in any mental health treatment program, and

19   any such program may include, at the recommendation of

20   appropriate professionals, the use of prescription medication.

21           You will be required to work and provide community

22   service.  I'm going to impose a community service -- an annual

23   community service requirement of 100 hours.  That's a slight

24   reduction from what the government proposed of 120 hours, 100

25   hours per year of supervised release, for the first five years

1    of the term of supervised release.  By that time I expect that

2    you would be fully employed.  I would also expect that work in

3    community service would become a part of your life without the

4    requirement of it being a term of your supervised release,

5    someone who professes to care for their fellow man, who should

6    be looking for opportunities to serve the community, whether

7    they're imposed on you or not.  I think the reward for

8    community service, once you have -- it has become an ingrained

9    part of your life will prompt you to continue that pattern,

10   but I will not require it as a term of supervised release for

11   more than the first five years.

12          There are a number of conditions that assure that the

13   probation office can effectively monitor your whereabouts and

14   your activities.  Those include that you must remain within

15   the district where you are being supervised, which absent

16   further court order will be the Northern District of Illinois

17   unless you're granted permission to leave by the Court or by

18   probation.  You must report to probation when you are directed

19   by the Court or by probation.

20          You must permit probation officers to visit at any

21   reasonable time at home, work, school or community service

22   location or other reasonable location specified by probation.

23   And during such visits, you must permit the confiscation of

24   any contraband that the officers may observe in plain view.

25          You must notify probation within 72 hours if you

1   change your residence or your employer or your workplace.

2           And unless there is some constitutional or other

3   legal privilege that permits you not to do so, you must answer

4   any questions posed by the probation office.

5           You must also notify probation promptly, within 72

6   hours, if you are arrested or questioned by any law

7   enforcement officer for any reason whatsoever.

8           You must also satisfy a number of other special

9   conditions.

10          You are required to submit at any time, with or

11  without a warrant, to a search of your person or any property,

12  house, apartment, residence, vehicle, records, computer,

13  electronic communication devices or other data storage devices

14  or electronic media or social media accounts, electronic

15  communications accounts, e-mail accounts or other electronic

16  communication accounts by any probation officer or other law

17  enforcement officer acting at the request of a probation

18  officer who has reasonable suspicion concerning a violation of

19  a condition of these terms of supervised release or a

20  violation of state or federal law while in the lawful

21  discharge of that officer's supervision functions.

22          The purpose of that is, again, to effectively enable

23  probation to monitor your activities and to verify that you,

24  in fact, are not conducting the sort of communications and

25  activity that led to your conviction in this case in your

1    commission of the offense in this case.

2          You will be required to participate in job skill

3    training programs at the direction of probation during the

4    period of supervised release, unless you are registered as a

5    full-time student pursuing an associate's degree, a bachelor's

6    degree, a graduate degree or other vocational training.

7          If you're unemployed -- if you're not in school and

8    you're unemployed for a period of more than 60 days, you will

9    be required to perform additional periods of community

10   service, up to an additional 20 hours per week until you

11   either return to school or achieve employment.  Again, it may

12   not be a saying that you are familiar with, but it is --

13   there's a phrase, idle hands are the devil's workshop.  You

14   need to be working, studying, directing your energies, keeping

15   busy in a productive life, not trolling the Internet, not not

16   contributing in a productive fashion.  So many of these

17   supervision requirements are designed to make sure that you

18   are doing the things that will reduce the risk that you pose

19   of future criminal conduct and will increase the likelihood

20   that you will have the tools and the education necessary to be

21   a productive and contributing member of our society.

22         You must provide probation with access to any

23   requested financial information necessary to monitor

24   compliance with any of the conditions of supervised release

25   that have been imposed.

1          Now, Mr. Hiller, one of the conditions suggested by

2     the government here was that the defendant not enter into any

3     agreement to act as an informant or a special agent of law

4     enforcement.  That's in special condition No. 11.

5          We also have special condition No. 14 which

6     appropriately reflects the ongoing cooperation requirements

7     set forth in the plea agreement.  I'm not sure that the

8     language that is set forth in the government's recommendation

9     really reconciles those two obligations.

10         MR. HILLER:  Paragraph 11 was meant to address

11    proactive and any type of interaction with law enforcement

12    that we would not be aware of.  If Mr. Khan, which is highly

13    doubtful, was asked to engage in proactive work, it would be

14    the government's intention to petition the Court and advise

15    the Court that we would be putting Mr. Khan in that type of

16    situation.  At this point in time, we don't think Mr. Khan

17    associating with the types of individuals that made him

18    responsible for this would be productive, and we just put it

19    in as a condition.  It's not necessary but just to be

20    complete.

21         THE COURT:  All right.  What I'm going to do is with

22    respect to that condition, I'm going to just preface it by

23    saying except as set forth in 14a below, the defendant shall

24    not enter into any agreement, et cetera.

25         Mr. Khan, understanding what Mr. Hiller has said, you

1    can't act as an informant or a special agent of law

2    enforcement without the permission of the Court except as you

3    are being directly supervised and directed by the United

4    States Attorney's Office consistent with the terms of your

5    plea agreement in this case.  And I suppose -- I want to --

6    I'm going to add language that makes clear that any proactive

7    cooperation requires court notification and approval.

8            The next recommended condition is the third-party

9    notification.  I am not going to impose requirement of

10   third-party notification.  Probation, if there is a concern,

11   can raise the issue with the Court, but I'm not going to

12   impose an affirmative obligation on Mr. Khan to make

13   third-party notification.  If third-party notification is

14   appropriate, it can be authorized by the Court for probation

15   to make as necessary.  So I don't think that's a necessary

16   term of supervised release.

17           Mr. Khan, you will also be required to attend violent

18   extremism counseling from providers as directed by the

19   probation office.  And you must also authorize as necessary

20   the release of any mental health treatment records or violent

21   extremism counseling records to the probation office.  Again,

22   that is so that the risk of recidivism here can be effectively

23   monitored.

24           MR. DURKIN:  Judge, could I just ask.

25           THE COURT:  Yes.

1    MR. DURKIN:  I'm assuming it's implicit in this that

2    probation couldn't otherwise share them with anyone without

3    court approval?

4    THE COURT:  That is implicit and is a requirement of

5    law, I believe.

6    MR. DURKIN:  I just -- that would be my only concern

7    with that.  You know, I don't know...

8    THE COURT:  We'll add some wording, for the exclusive

9    use of probation and the Court.

10   MR. DURKIN:  Thank you.

11   And just to be safe, could we just say there will be

12   no dissemination without court approval?

13   THE COURT:  Yes.  All right.

14   Now, there are also, Mr. Khan, conditions here that

15   relate to your -- the requirement that you comply with the

16   requirements of the computer and Internet monitoring program

17   administered by the probation office.  You must consent and

18   with respect to any computers or devices capable of accessing

19   the Internet that are in -- and I'm going to add this

20   language -- that are in your personal possession, custody or

21   control, that you consent to the installation of computer

22   monitoring software on those computers.  And by that I mean

23   software that may restrict and/or record any and all activity

24   that occurs on the computer, including the capture of

25   keystrokes, the application information, the Internet use

1   history, e-mail correspondence and chat conversations.  Notice

2   will be placed on any such devices at the time of installation

3   to warn others of the existence of the monitoring software,

4   and you may not remove, tamper with, reverse-engineer or in

5   any way circumvent such software.

6         Now, Mr. Hiller, I think that the term "in the

7   defendant's personal possession, custody or control as

8   necessary," we certainly hope that Mr. Khan will move forward

9   with his life and have productive employment.  And I don't

10  think it's appropriate or reasonably feasible from a legal

11  standpoint to impose monitoring software on a third-party

12  computer like that.  Does the government take any different

13  view?

14        MR. HILLER:  No.  No.

15        THE COURT:  All right.

16        MR. HILLER:  The probation office is not going to be

17  asked to put the monitoring software on a legitimate business'

18  computers.

19        THE COURT:  All right.  So that's the purpose of

20  adding in "the defendant's personal possession, custody or

21  control."  That would not extend to devices that are the

22  property of an employer and subject to the employer's rights

23  as opposed to Mr. Khan's rights.

24        In addition, as part of the computer and Internet

25  monitoring program, you must allow probation to search any of

1    the devices or accounts that I have described that are in your

2    personal possession, custody or control up to four times a

3    month between 6:00 a.m. and 10:00 p.m. during the entire

4    period of supervised release.  And I'm going to add, again,

5    just for clarity that this condition does not waive the right

6    of any other person or entity with respect to such devices,

7    accounts or property to ensure that any other entity that had

8    a protected right would have the -- the government would have

9    to address that right in order to carry out such a search.

10    But that would not apply to any property -- personal property

11    of Mr. Khan that is in his possession, custody or control.

12          Now, to the extent that any of the obligations under

13    the computer and Internet monitoring program are released

14    during the period of the term of supervised release, you will

15    nevertheless be required to provide notice to probation within

16    24 hours of opening any new online or communication accounts

17    that would enable you to communicate through electronic

18    devices or online.

19          You will be required to seek prior approval by the

20    probation office before you possess or -- before you possess

21    any device that can access the Internet.  Now, again, and I'm

22    on paragraph F of condition 14, special condition 14.  Both

23    subparagraph (i) and (ii) purport to -- would require prior

24    approval by probation for the use of any device that can

25    access the Internet, as well as in subparagraph (ii)(2) that

1    there be prior approval before accessing any website as well.

2    I have a question -- I just question the feasibility of those

3    restrictions.  Given our hope and expectation that Mr. Khan

4    will be employed at some point, will be a student at some

5    point, how it's reasonably practical that he can obtain

6    advance notification from probation before accessing a

7    specific website?

8              MR. HILLER:  I think it's a matter he's going to have

9    to work out with probation as he crosses those milestones.  I

10   agree that functioning in an office environment or functioning

11   as a bachelor's degree student at a college is going to

12   require him to access the Internet and, in fact, many of his

13   classes may be online.  We contemplate for that.  But I think

14   he will be able to work through the computer Internet

15   monitoring software with probation.  It's going to require

16   advance notice.  It's going to require obtaining his syllabi

17   beforehand and working through what his requirements are so

18   that they can set the thresholds on the computer Internet

19   monitoring so he can even access those, so he can physically

20   access them because the program will limit where he is able to

21   go.  So if he's on his home laptop, he will just not be able

22   to enter any website that he wants to and reach that website.

23   He will be prohibited, will not be able to access those sites.

24   So he's going to have to determine what types of sites and

25   work through those things.  And it will be hard, and there

1    will be a lot of obstacles, but I know probation is prepared.

2    And they've been working through these issues and will be able

3    to accomplish them.

4           I think we can come back to the Court to seek

5    modification.  Obviously my office understands the purpose of

6    these supervised release conditions in furthering his

7    education, and we're not going to stand in the way of that or

8    his employment.  But at the same time, it is just too

9    impossible to allow him to access the web without extremely

10   serious conditions at first.  And then as time comes on, I

11   think we can -- based on his response to the Court's

12   conditions can modify those appropriately.  But he wouldn't be

13   able to take any computer class on day one.  He wouldn't be

14   able to take any job without working through those issues with

15   probation.  Just physically it wouldn't be possible.

16          THE COURT:  All right.  Well, again, it's not just a

17   question of taking a computer class.  It's probably a question

18   of taking any class from the standpoint of, as you've said,

19   you know, most of this material is online now.  Even if you've

20   got a syllabus for a particular course, you know, with a

21   required reading, you know, there might be internal jump sites

22   to reference materials, things like that.  I mean, I don't

23   know as a practical matter -- I mean, how are you -- and maybe

24   this may be the way that the software works, and I don't

25   understand enough about how the software works.  And I -- I

1    completely understand.  I'm not suggesting the government is

2    trying to set Mr. Khan up to fail here, but how is this, on a

3    routine basis, handled in a way that permits someone to, you

4    know, reasonably do the assigned reading in several college

5    courses?

6              MR. HILLER:  There is no routine basis because this

7    is the first time that we have taken the computer Internet

8    monitoring software and applied it to a situation like that.

9    So this is a unique situation.  Probation has spent a lot of

10   time working through these issues already.  I have spent a

11   considerable amount of time working through these issues.  We

12   do realize that they will present obstacles, and I believe

13   we'll be able to work through them.  But I do think it's

14   important that the conditions are restrictive initially and

15   then we ask to modify upon understanding the situation at that

16   point in time.  When he comes in and if it's not practical,

17   then we come to the Court and say, we're going to have to

18   relax these to allow him to function as a student, as opposed

19   to giving him that freedom now.  We just don't know the

20   situation he will be in.  It could be a situation where we

21   give him a lot of latitude but really prevent the

22   communication applications.  But we don't know where he's

23   going to be in 40 months and what he's going to be asking to

24   do so we would prefer those, the restrictions, to be at the

25   highest level now and then allow us to either work through

1    probation's discretion.  They obviously maintain a lot of

2    discretion in applying the computer internet monitoring

3    program, and if it's not applicable, petition Your Honor for a

4    change in the conditions.

5              THE COURT:  All right.

6              Mr. Durkin, do you have any --

7              MR. DURKIN:  Well, we talked about this a lot.  I

8    don't profess to understand half of the sophisticated computer

9    monitoring, and obviously from a philosophical basis, I recoil

10   from it.  But I think Mr. Hiller and I have been able to work

11   things out.  I don't disagree with him that we should wait and

12   see where he's at.  I think maybe if we -- I mean, we have a

13   record here.  I think -- I guess, you know, I mean, we could

14   start parsing it but, you know, does it --

15             THE COURT:  Well, it is obviously difficult to craft

16   the precise language at this stage.

17             MR. DURKIN:  Right.

18             THE COURT:  All right.  I'm satisfied at this point.

19   You understand where I'm at.  If there is a problem that

20   poses, you know, a material impediment to Mr. Khan's ability

21   to do the work necessary to, you know, complete his

22   coursework, I mean, I think we're all in accord --

23             MR. DURKIN:  Could I have a second to talk -- could I

24   just ask Mr. Hiller something?

25     (Off the record.)

1    MR. HILLER:  Judge, just to give you an example,

2 without these conditions as restrictive as they are, if he's

3 not working or if he's not in school upon his release or at

4 some point during his period of supervised release, he would

5 be able to access any computer that's not part of a computer

6 Internet monitoring program and have free reign.  So until he

7 has a job or until he has a class that requires certain levels

8 level of access to the Internet, we'd prefer to keep it

9 strict.  And at that point in time, we could say for purposes

10 of this job, you're able to access the Internet once we

11 understand what the job is going to be.

12    THE COURT:  Sure.

13    MR. HILLER:  So that really underlies the purpose.

14    THE COURT:  All right.  So I'll leave it as is,

15 understanding that if there is some material impediment that

16 you're not able to work out, that can be brought back and

17 addressed.  I'm satisfied everyone is on the same page here,

18 that no one wants to impose that sort of impediment to

19 Mr. Khan getting what everyone agrees is the necessary

20 education to equip him to move forward productively.

21    All right.  So those restrictions as set forth, you

22 cannot possess or use any device that can access the Internet

23 without prior approval of probation.  You must seek prior

24 approval by probation to access websites or online

25 applications.

1    You may not view any online social media, chat

2  services, blogs, instant messaging or other communications,

3  applications or sites without prior approval from the

4  probation office.  You may not use any encryption services or

5  online encrypted communication applications without prior

6  approval of probation or the Court.  You may not use any

7  service or application that is designed to disguise, mask or

8  anonymize your online activity without prior approval of

9  probation or the Court, and you may not use any online gaming

10  services or systems without prior approval of probation or the

11  Court.

12    And, finally, with respect to those requirements, if

13  you have any questions about whether activity relating to the

14  use of computer services or accessing online sites or services

15  or application, all such questions should be addressed with

16  probation and/or the Court before resolving them on your own.

17    All right.  I think that was it for the terms of

18  supervised release.

19    As set forth in and based on our discussion,

20  Mr. Durkin, do you have any objections to those terms of

21  supervised release?

22    MR. DURKIN:  No, Judge.

23    THE COURT:  All right.  Are there any aspects of the

24  sentence to which you object at this point?

25    MR. DURKIN:  No.

1          THE COURT:  All right.

2          The government, in requesting the sentence to be

3    imposed of five years, I don't know if you ever expressly made

4    the motion, but I understand the government moved to --

5          MR. HILLER:  Absolutely.

6          THE COURT:  -- have the sentence depart from the

7    applicable guideline range to a sentence of five years.  I

8    have actually gone below the government's recommendation.  The

9    government has made the required motion.

10          The defendant is therefore -- his right to appeal the

11    sentence or his conviction on any basis other than the

12    voluntariness of his guilty plea or ineffective assistance of

13    counsel, which would face a hard road in light of Mr. Durkin's

14    very fine service, has been waived, but if any appeal is to be

15    taken from the judgment in this case, it must be done within

16    14 days of entry of judgment on the docket, which will be

17    entered in all likelihood on Monday.

18          Mr. Durkin, are you seeking any recommendation

19    regarding the place of incarceration for the balance of the

20    term of imprisonment?

21          MR. DURKIN:  I would ask that he remain at the MCC.

22          THE COURT:  Okay.  I'm happy to make that

23    recommendation.

24          Mr. Khan, you need to understand that I do not have

25    the authority to dictate to the Bureau of Prisons where they

1    put you for the remainder of the prison term.  That is up to

2    them.

3              From probation's perspective, is there anything I've

4    neglected to offer?

5              PROBATION OFFICER CHRISTIANSEN:  No, Judge.

6              MR. DURKIN:  Judge, there is an issue that Mr. Hiller

7    raises regarding --

8              MR. HILLER:  Just with respect to recommendation that

9    Mr. Khan has publicly been named as a cooperator for the

10   government, so the Bureau of Prisons takes that into

11   consideration.

12             THE COURT:  All right.

13             MR. HILLER:  That was a discussion Mr. Durkin and I

14   had some number of weeks ago.

15             THE COURT:  Okay.  There are many factors the Bureau

16   of Prisons has to take into account, that being one of them.

17   They will also consider my recommendation, but ultimately they

18   are responsible for the security and management of those

19   institutions, and they have the final say in terms of where

20   somebody is designated.  So it may end up being the MCC.  It

21   may not.

22             All right.  Anything else, Mr. Hiller, from the

23   government's perspective?

24             MR. HILLER:  Judge, just imposition of special

25   assessment.  That would be it.

1          THE COURT:  Thank you.  I am not imposing a fine.  I

2     don't believe Mr. Khan in the foreseeable future will have the

3     resources to pay a fine.

4          Restitution is not an issue in this case.

5          I am required, however, to impose a special

6     assessment on the count of conviction of $100.

7          Mr. Khan, I have made similar remarks before.  You

8     have not been present for -- on those occasions, but I want to

9     end this proceeding by expressing my hope that you appreciate

10    what has happened in this case, which may be somewhat

11    difficult for you to do standing there in custody.  But I want

12    to think about this:  You are standing there as someone who

13    was on his way to joining an organization that would like

14    nothing better than to destroy the United States.  And you,

15    who professed to regard this country as your enemy, have not

16    been treated as an enemy.  You have been treated with

17    compassion and respect by the representatives of this

18    government, and that is certainly not the treatment a defector

19    would have received at the hands of ISIL.  Instead of a public

20    beheading, you have been given a public trial proceeding.  You

21    have had the benefit of able counsel.  Your family and your

22    friends have had the right to be heard and have had the right

23    to be present here for every proceeding in this case.

24         You have been sentenced only after consideration of

25    your personal history and characteristics, and the sentence

1    that has been imposed in this case is far lower than the

2    sentence that the law would allow.  And as part of that

3    sentence, you are going to be provided with support and

4    resources to help ensure that the mistakes you have made that

5    have put you in this circumstance will not haunt you for the

6    rest of your life and will not drag you down for the rest of

7    your life.

8         The enemy government has not tried to kill you.  It

9    has tried to help you.  And I don't think there is anything

10   that can demonstrate more eloquently or more powerfully this

11   country's respect for the dignity and worth of all human

12   beings than the justice and compassion that it extends even to

13   those who would seek to destroy it.  Nothing can better expose

14   the moral depravity that is ISIS than to contrast its

15   barbarism with the very highest standards of civilized

16   behavior, and those are the standards that the government of

17   the United States has met in this case.  And it is my profound

18   hope that by providing such clear evidence of the contrast

19   between civilization and barbarism that you will actually help

20   the world oppose and defeat ISIL rather than promoting it.

21   That would be the best penance that you could possibly perform

22   for the commission of this crime, and I hope you will continue

23   to do it.

24        We are adjourned.

25        MR. DURKIN:  Thank you, Judge.

1          MR. HILLER:  Thank you, Your Honor.

2      (Which were all the proceedings heard.)

3

4                      CERTIFICATE

5      I certify that the foregoing is a correct transcript from

6  the record of proceedings in the above-entitled matter.

7  */s/Kelly M. Fitzgerald*              *December 12, 2016*

8  _____        _____
   Kelly M. Fitzgerald                      Date
9  Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25